## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION
www.flmb.uscourts.gov

In re

ADMIRE RESTORATIVE MENTAL
HEALTH SERVICES INC.,

    Debtor.
_____/

ELLIE FAM LLC,

    Plaintiff,

v.

KROMA PROPERTY MANAGEMENT
INC., A/K/A ADMIRE RESTORATIVE
MENTAL HEALTH SERVICES, INC. and
ADMIRE KROMA,

    Defendants.
_____/

Case No.: 6:24-bk-02861-TPG
Chapter 11, Subchapter V

Adv. Proc. No.: 6:24-ap-00105-TPG

**MOTION FOR PRELIMINARY INJUNCTION (INJUNCTIVE RELIEF SOUGHT)**

    Plaintiff Ellie Fam LLC ("Ellie Fam"), pursuant to Fed. R. Civ. P. 65, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7065, files this Motion seeking a preliminary injunction to enjoin the debtor, Defendant Admire Restorative Mental Health Services, Inc. ("Admire" or "Debtor"), from violating the restrictive covenants not to compete and not to use Ellie Fam's trademarks contained in the parties' Franchise Agreement. Admire is a former franchisee of Ellie Fam. In its bankruptcy case, Admire rejected its contracts with Ellie Fam. (Doc. No. 48.) Subsequently, Admire's owner recently confirmed to Ellie Fam that Admire is operating or will operate a competing behavioral health clinic. Moreover, Admire continues to use Ellie

1

Fam's trademark. By this Motion, Ellie Fam seeks an order enjoining Admire and its owner Admire Kroma from operating a competing business and infringing upon Ellie Fam's trademarks.

## FACTUAL BACKGROUND

### 1.     The Ellie Fam System

Ellie Fam owns and licenses a system for operating outpatient counseling and therapy clinics offering a wide variety of counseling, medication management, and therapeutic products and services to individuals, couples, families, groups, and children, under the "Ellie Mental Health®" trademark and other trademarks, trade names, service marks, and commercial symbols (the "Ellie Mental Health® System").[1] Ellie Fam was founded in 2015 and has grown from a single clinic to a nationwide franchise with over 230 franchised clinics, including 16 in Florida.

Ellie Fam has expended substantial sums of money and other resources in developing, promoting, and establishing the Ellie Mental Health® System. The Undajon Declaration describes in detail the extensive training and support that Ellie Fam provides to its franchisees. Among many other things, new franchisees and their clinic directors receive training on the Ellie Fam business model and learn how to operate a successful clinic at Ellie Academy. Ellie Fam also provides its franchisees with access to its confidential information, including its manual that describes its proprietary methods and procedures, as well as training materials and client database. Ellie Fam's franchisees expect, depend upon, and agree to Ellie Fam's right and responsibility to protect the Ellie Mental Health® System from those who attempt to take the knowledge, experience, and intellectual property acquired from Ellie Fam and use it to operate their own competing businesses in violation of their agreements and applicable law.

---

[1] A more detailed description of the Ellie Mental Health® System is found in paragraphs 6 through 19 of Ellie Fam's Verified Complaint.

2. **Admire's Ellie Fam Franchise and Relevant Agreements**

Admire opened its Ellie Mental Health® clinic in Ocoee, Florida in June, 2023 after entering into a franchise agreement on June 3, 2022.[2] Like other franchisees, Admire received the information and know-how to get its clinic up and running. Admire's owner, Ms. Kroma had no prior experience owning or operating an outpatient counseling and therapy clinic. She had the benefit of learning and using the entire "System" of methods, procedures, standards, specifications, and the Ellie Marks within the model that Ellie Fam created.

Admire entered into several agreements with Ellie Fam, including a franchise agreement with an effective date of June 3, 2022 (the "Franchise Agreement").[3] Ms. Kroma executed a Guaranty wherein she agreed to be individually bound by Admire's covenants in the Franchise Agreement (the "Guaranty"). In the Franchise Agreement, Admire (and through the Guaranty, Ms, Kroma) agreed that:

- Admire would not disclose or misappropriate Ellie Fam's confidential information (Franchise Agreement, Section 14(a));

- Admire would immediately discontinue the use of Ellie Fam's Names and Marks upon the termination of the Term of the Franchise (*Id.*, Section 10(d));

- Admire would not "directly or indirectly operate, own, manage, be employed by or consult with any Competitive Business . . . that is located or doing business in the Restricted Area" for a period of two years following termination of the Agreement (referred to herein as the "Noncompete") (*Id.*, Section 15(a)(2));[4] and

- The Noncompete was reasonable and necessary to protect the Ellie Mental Health® System, and Ellie Fam would have the right to injunctive relief to enforce the Noncompete. (*Id.*, Section 15(b)).

---

[2] Admire's franchise is described in more detail in paragraphs 20-22 of Ellie Fam's Verified Complaint.
[3] The Franchise Agreement is found beginning on page 17 of Exhibit 1 to Ellie Fam's Verified Complaint, and the Guaranty is found beginning on page 58 of Exhibit 1.
[4] The "Restricted Area" is defined in Section 1 of the Franchise Agreement as "the Designated Territory, a radius of ten (10) miles from the Designated Territory, and a radius of ten (10) miles from any other Ellie Family Services or Ellie Mental Health clinic in existence as of the date of termination, expiration, or assignment of this Agreement." The Designated Territory is shown on a map on page 82 of Exhibit 1 to Ellie Fam's Verified Complaint.

### 3. Admire's Breach of the Franchise Agreement

On June 6, 2024, Admire filed a voluntary petition for relief under Subchapter V of Chapter 11 of Title 11 of the United States Code. The Bankruptcy Court granted Admire's motion to reject its executory contracts with Ellie Fam, effective as of June 18, 2024. (Doc. No. 48.)

On or about August 23, 2024, Ms. Kroma admitted to Emily Undajon, Ellie Fam's SVP of Franchise Operations, during a video conference call discussion that Admire was operating or intended to operate a competitive outpatient counseling and therapy clinic that was focused on telehealth. Ms. Kroma also said that she already had transferred all the client records held in Ellie' centralized electronic records system to the new business and that she brought two therapists from the Ellie Fam clinic to the new business. Ellie Fam later learned that Admire's new office is located at 7635 Ashley Park Court, Suite A, Orlando, Florida 32835. This location is within Restricted Area, as it is within ten (10) miles from the Designated Territory.

Admire also is infringing upon the Ellie Marks. The West Orange Chamber of Commerce maintains a "business directory" on its website. "Admire Mental Health" has a listing in the West Orange Chamber of Commerce online business directory. On its listing, Admire displays a number of Ellie Marks and pictures of the trade dress from Admire's Ellie Mental Health® clinic.[5]

### ARGUMENT

### I. Ellie Fam Is Entitled to a Preliminary Injunction.

### A. Florida Law Applies to the Noncompete.

The Franchise Agreement in Section 23(b) states that the Agreement shall be governed by Minnesota law, provided, however:

> that if [Admire] is not a resident of Minnesota, or if the Franchised Business is not located in Minnesota, then they hereby waive the provisions of the

---
[5] A true and correct copy of a screenshot of the Chambers page is attached to the Verified Complaint as Exhibit 2.

> Minnesota franchise law . . . and the regulations promulgated thereunder. If the Minnesota franchise law does not apply to the Franchise relationship created hereby, but there is a statute in the state in which the Franchised Business is situated that specifically governs relationships between franchisees and franchisors and that law would otherwise apply, then that particular law shall apply in lieu of the laws of the State of Minnesota.

Here, Admire is not located in Minnesota, but Florida statutes, including Fla. Stat. § 542.335, specifically govern the relationships between franchisees and franchisors and would other apply.

### B. Standard for Preliminary Injunctive Relief

The Court may enter a preliminary injunction pending a trial on the merits pursuant to Fed. R. Civ. P. 65, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7065, and pursuant to the Court's authority under 11 U.S.C. § 105(a). A party seeking injunctive relief must prove: "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000). Here, Ellie Fam meets these requirements for obtaining preliminary injunctive relief as to its breach of contract and trademark claims.

### C. Ellie Fam Has a Substantial Likelihood of Success on the Merits of its Claims.

#### 1. Admire's Rejection of the Franchise Agreement Does Not Terminate Its Covenant Not to Compete.

As an initial matter, although it rejected the Franchise Agreement (and related agreements) Admire remains bound by the Noncompete and its other post-termination covenants. While the Court authorized Admire to reject the Franchise Agreement, such a rejection "is thus correctly viewed only as a power to breach the executory contract." *In re Printronics, Inc.*, 189 B.R. 995, 1000 (Bankr. N.D. Fla. 1995) (quotation and citation omitted). In other words, "rejection, as

contemplated under the Bankruptcy Code, of an executory contract does not terminate this franchise agreement." *Id*.

Nor is the Noncompete dischargeable under Section 1141(d). A bankruptcy discharge, including one under Section 1141(d) only discharges "debts," and a "debt" is defined as "liability on a claim." 11 U.S.C. § 101(12). When deciding whether a covenant not to compete is a "claim" that could be discharged, courts examine whether the remedy for a breach of such covenant "gives rise to a right of payment." *In re Cox*, 53 B.R. 829, 832 (Bankr. M.D. Fla. 1985). In *Cox*, the court held that "[i]n Florida, the usual remedy for breach of a 'non-competition' covenant is injunctive relief." *Id*. Thus, that court held, if the plaintiff "is entitled to injunctive relief against debtor then this relief would not be a 'claim' within the meaning of" the Code's definition. *Id*.; *see also In re Peltz*, 55 B.R. 336, 338 (Bankr. M.D. Fla. 1985) (injunctive relief prohibiting debtor from soliciting customers "would not require an expenditure of money" and therefore is not a claim that could be discharged). Indeed, "[m]ost courts addressing the issue of whether equitable relief for breach of a covenant not to compete is a 'claim' – and therefore, dischargeable in bankruptcy – have found that it is not." *In re LaFemina*, Case No. 14-43362-nhl, 2017 WL 4404254, *4 (Bankr. E.D.N.Y., Sept. 30, 2017) (collecting cases and noting that the only two appellate courts to address the issue, the Sixth and Seventh Circuits, "both declined to find that an injunction for breach of a covenant not to compete constituted a claim, dischargeable in bankruptcy"); *Kennedy v. Medicap Pharmacies, Inc.*, 267 F.3d 493 (6th Cir. 2001); *In re Udell*, 18 F.3d 403, 408 (7th Cir. 1994).

**2. Ellie Fam Is Likely to Succeed on Its Claim that Admire Breached the Noncompete.**

For two years following termination of the Franchise Agreement, the Noncompete prevents Admire from operating, owning, managing, or being employed by a Competitive Business that is located or doing business in the Restricted Area. Compl., Ex. 1 at 40 (Sec. 15(a)(2). "Competitive

6

Business" means "any business, clinic, program, or other venture that holds itself out as providing outpatient counseling or therapy products or services." *Id*. at 19 (Sec. 1(b). Because Ms. Kroma admitted that Admire operates a clinic located in the Restricted Area that holds itself out as providing outpatient counseling or therapy services, Admire is in breach of the Noncompete.

Moreover, the Noncompete is valid. "Under Florida law, a covenant not to compete is valid if it is reasonably limited in time and area, and furthers a legitimate business interest."[6] *R.J. Gators Franchise Sys., Inc. v. MBC Rest., Inc.*, No. 2:05-cv-00494-VMC-DNF, 2005 WL 4655379, *4 (M.D. Fla. Nov. 9, 2005) (quotation omitted). The Noncompete's time limit of two years and geographic limit of the Restricted Area are reasonable. *See R.J. Gators*, 2005 WL 4655379, at *4 (limit of ten miles from franchise location and two years is reasonable); *see also Kava Culture Franchise Grp. Corp. v. Dar-Jkta Enters. LLC*, No. 2:23-cv-278-JLB-KCD, 2023 WL 3121893, *3 (M.D. Fla. Apr. 27, 2023) (limit of 75 miles and two years is reasonable); *Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526, 531 (Fla. Dist. Ct. App. 2003) (limiting doctor within ten miles from any clinic operated by former employer and two years is reasonable).

A "legitimate business interest" may include, among other things, trade secrets, confidential business information, relationships with prospective or existing patients or clients, goodwill associated with a trade name or trade mark, or extraordinary or specialized training. Fla. Stat. § 542.335(1)(b). Courts in this District routinely find that a franchisor's legitimate business interests include "at least, protection of (1) trademarks, service marks and trade dress and the goodwill associated therewith, and (2) valuable confidential information belonging to the" franchisor. *See, e,g. Kava Culture*, 2023 WL 3121893, at *4; *R.J. Gators*, 2005 W 4655379 at *5.

---

[6] Similarly, under Minnesota law, noncompete covenants are enforceable if the restriction is "reasonable" and the "legitimate interest" of the party seeking enforcement is greater than that of the party seeking nonenforcement. *Powerlift Door Consultants, Inc. v. Shepard*, No. 21-cv-1316 (WMW/ECW), 2021 WL 2911177, at *4 (D. Minn. July 12, 2021).

7

Courts also have held that franchisors established a legitimate business interests of "protecting the viability of its franchise system and preventing previous franchisees from breaching their franchise agreements," as well as "goodwill associated with [its] franchise system." *U.S. Lawns, Inc. v. Landscape Concepts of CT, LLC*, No. 6:16-cv-929-Orl-41DAB, 2016 WL 9526340, *5 (M.D. Fla. Oct. 31, 2016). Finally, "Florida courts have held that covenants not to compete are reasonably necessary to protect a franchisor's legitimate business interest in re-entering the market formerly serviced by a terminated franchise." *Peterbrooke Franchising of Am., LLC v. Miami Chocolates, LLC*, 312 F.Supp.3d 1325, 1338 (S.D. Fla. 2018) (vacated on other grounds). Here, Ellie Fam has several legitimate business interests that justify the Noncompete, including protecting its trademarks and the goodwill associated with them, protecting its valuable confidential information, including its operation manuals and other documentation that describe its franchise system and its client information, protecting the viability of its franchise system, preventing franchisees from breaching their franchise agreements, protecting the goodwill associated with its franchise system, and re-entering the market formerly serviced by Admire.

### 3. Ellie Fam Is Likely to Succeed on its Trademark Claims.

A defendant is liable under the Lanham Act if without consent he uses "in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 11 U.S.C. § 1114(1)(a). A plaintiff "must demonstrate that the defendant's mark is likely to cause consumer confusion." *Peterbrooke Franchising*, 312 F.Supp.3d at 1339. "[I]t is well settled that when a terminated franchisee continues to use the former franchisor's trademarks without authorization, that conduct, by its very nature, confuses consumers and constitutes trademark infringement." *Id.*;

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ("Common senses compels the conclusion that a strong risk of consumer confusion arises when a terminated Licensee continues to use the former franchisor's trademarks.") Here, Admire has continued to use Ellie Fam's trademarks without authorization. *See* Ex. 2 to Verified Compl. Admire's continued use constitutes trademark infringement.

### D. Ellie Fam Will Suffer Irreparable Harm in the Absence of an Injunction.

"The Eleventh Circuit deems injunctions the normal and favored remedy for violations of restrictive covenants because monetary damages are typically quite difficult to establish and often cannot adequately compensate for that type of breach." *R.J. Gators*, 2005 WL 4655379, at *5 (citing *Ferrero v. Assoc. Materials, Inc.*, 923 F.2d 1441, 1448-49 (11th Cir. 1991)). A former franchisee who is violating its noncompete "threatens the [franchisor's] franchise system as a whole; if not enjoined [franchisee's] conduct sends a message that the Franchise Agreement does not protect [franchisor] and may be disregarded at will." *R.J. Gators*, 2005 WL 4655379, at *5. Moreover, "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant." *Kava Culture*, 2023 WL 3121893 at *4. Because Ellie Fam has established that the Noncompete is enforceable and that Admire violated it, Ellie Fam is entitled to a presumption of irreparable injury. Similarly, "[o]nce a plaintiff establishes a likelihood of success on the merits of a trademark infringement claim, a presumption of irreparable harm arises." *Bahia Bowls Franchising LLC v. DJS LLC*, No. 2:23-cv-94-JLB-NPM, 2023 WL 2303048, *7 (M.D. Fla. March 1, 2023).

### E. The Injury to Ellie Fam Outweighs Any Damage to Admire.

"Generally, a franchisee that has breached the terms of its franchise agreement cannot then complain of harm from an injunction preventing further violations of the agreement." *Kava

*Culture*, 2023 WL 3121893, at *4. Even if Admire will suffer financial losses if an injunction issues, "the resulting harm follows from [its] failure to abide by the" Noncompete. *U.S. Lawns*, 2016 WL 9526340, at *9; *7-Eleven, Inc. v. Orlando Empire, Inc.*, No. 6:19-cv-502-Orl-37GJK, 2019 WL 2613333, at *2 (M.D. Fla. May 3, 2019) (breaching party's "harm is self-inflicted and due little weight in comparison to the immeasurable losses to 7-Eleven's goodwill being caused by Defendants"). Thus, Admire cannot claim of the "self-inflicted" harm that flows directly from its breach of the Noncompete and misuse of Ellie Fam's trademarks.

### F. An Injunction Is Not Adverse to the Public Interest.

"[T]here is a benefit to the enforcement of a valid covenant not to compete and encouraging people to adhere to contractual obligations." *R.J. Gators*, 2005 WL 46555379, at *5. Moreover, "it is not in the public interest to condone [a franchisee's] material breach of the Franchise Agreement or to allow [a franchisee] to continue to operate the franchise with the unauthorized use of [the franchisor's marks] for an extended period of time." *Bahia Bowls*, 2023 WL 2303048, at *5. Also, "it is in the public interest for the Court to prevent public confusion over the source or origin of products provided to the public." *R.J. Gators*, 2005 WL 46555379, at *4.

## CONCLUSION

Admire's operation of a competitive business and its use of Ellie Fam's trademarks must be stopped, and Ellie Fam's contractual and intellectual property rights must be enforced. Accordingly, Ellie Fam requests that the Court issue an injunction enjoining Admire and its owner Ms. Kroma from operating a competing business and infringing upon Ellie Fam's trademarks.

Dated: September 6, 2024          Respectfully submitted,

          */s/ Lara Roeske Fernandez*
          Lara Roeske Fernandez, Esquire
          Florida Bar No. 88500
          lfernandez@trenam.com

TRENAM, KEMKER, SCHARF, BARKIN,
  FRYE, O'NEILL & MULLIS, P.A.
101 E Kennedy Boulevard, Suite 2700
Tampa, FL  33602
Tel: (813) 223-7474

Gregory S. Otsuka (*Pro Hac Vice* pending)
Larkin, Hoffman, Daly & Lindgren, Ltd.
8300 Norman Center Drive, Suite 1000
Minneapolis, MN 55437-1060
Tel: (952) 835-3800
gotsuka@larkinhoffman.com

ATTORNEYS FOR ELLIE FAM LLC